```
 1 │ LAW OFFICES OF JAMES P. WOHL
   │ James P. Wohl    (SBN 34866)
 2 │ wohl@wohl-law.com
   │ Eileen P. Darroll  (SBN 136998)
 3 │ edarroll@wohl-law.com
   │ Niall A. Fordyce  (SBN 256059)
 4 │ nfordyce@wohl-law.com
   │ 1875 Century Park East, Suite 1000
 5 │ Los Angeles, California 90067
   │ (310) 557-2349
 6 │ (310) 557-2349 - Facsimile
 7 │ Attorneys for the Plaintiff
```

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUIE A. FIGG, as Trustee of The Paulina 733 Revocable Living Trust<br><br>Plaintiff,<br>v.<br><br>CITY OF REDONDO BEACH, a municipality located in the County of Los Angeles; and DOES 1-10,<br><br>Defendants. | CASE NO.<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1. **VIOLATION OF 42 U.S.C. SECTION 1983, DEPRIVATION OF RIGHT OF PROCEDURAL DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION**<br>2. **TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF UNDER 42 U.S.C. SECTION 1983**<br>3. **DECLARATORY RELIEF FOR VIOLATIONS OF RIGHTS OF PROCEDURAL DUE PROCESS**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Jacquie A. Figg, as Trustee of The Paulina 733 Revocable Living Trust ("Trustee") respectfully alleges as follows:

### I. NATURE OF THE ACTION

1. Plaintiff, The Paulina 733 Revocable Living Trust ("Trust"), by and through Trustee, owns property at 733 N. Paulina Avenue in the City of Redondo

Beach (the "Project"), including a partially built residential structure,.

2. The Project's prior owner, Rami Nassif ("Nassif"), deeded the Project to Trust on or about January 11, 2011 (the "Deed").

3. On or about September 28, 2012, the City of Redondo Beach ("Defendant City") brought criminal charges against Nassif, alleging, *inter alia*, that the Project constituted a nuisance (the "Nassif Action").

4. The trial court in the Nassif Action issued its order on or about June 16, 2014 (the "Order"), allowing Defendant City to demolish the Project.

5. Although Trust was and is the rightful owner of the Project, and although Defendant City knew of Trust's ownership (by virtue of actual knowledge, by way of knowledge imparted by evidence adduced at the Nassif Action, and / or by way of the constructive notice imparted by recordation of the Deed), that Trust was the rightful owner of the Project, Defendant City provided no notice or opportunity to be heard to Trust at any time in any aspect of the Nassif Action, the prosecution of which had focused in part upon Defendant City's request for demolition of the Project. The failure to provide notice and an opportunity to be heard continued even up to and including the Order granting Defendant City permission to demolish the Project.

6. Trustee has pursued all available avenues of relief from the Order at Defendant City. Despite Trustee having demonstrated to Defendant City the validity and viability of completing the Project as well as the foregoing failure to provide Trustee notice and an opportunity to be heard, Defendant City has steadfastly refused to reconsider demolition and has apparently directed its Planning Commission, Planning Department, Building Department, and City Council to comply with the Order, because all refuse to reconsider. Defendant City continues to move forward to demolish the

Page 2

Project in the face of its patent failure of notice to Trustee and an opportunity to be heard, as well as in light of safety issues involving potential for damage to contiguous and adjacent properties involved in the demolition of the Project and the potential of liability of Trust therefor.

7. As a result of Defendant City's conduct, Trust has been deprived of its constitutional rights of notice and an opportunity to be heard, excluded from its property, precluded from completing the Project, and deprived of its property rights and interest in the Project.

8. Defendant City has provided no process whatsoever to compensate Trust for damages associated with Defendant City's demolishing the Project.

9. Trust seeks temporary, preliminary and permanent injunctive relief from the demolition and violations of law, *inter alia*, violation of Trust's due process rights under the United States Constitution pursuant to 42 U.S.C. Section 1983, by way of declaratory relief, compensation for depravation of Trust's due process rights, and compensatory damages incurred by the Trust based on Defendant City's threatened and/or actual demolition of the Project.

## II. PARTIES

10. Trustee is a citizen of the United States and resides in Perris, California. Trustee brings this action as such trustee.

11. Defendant City is a municipality located in the County of Los Angeles, California.

12. Trustee is presently unaware of the true names and capacities, whether individual, associate, corporate, or otherwise of Does 1 though 10 or any of them, and therefore sues such persons by such fictitious names. Trustee has been unable to conduct an investigation and discovery, *inter alia*, because of Trustee's exclusion from any aspect of the Nassif Action and the failure of Defendant City to voluntarily provide facts to Trustee. Trustee will seek

1  leave to amend this Complaint to show the true names and capacities of such fictitiously named persons when the same have been ascertained. Trustee is informed and believes and thereon alleges that each of the persons designated herein as a Doe is legally responsible in some manner for the acts, omissions, and events alleged herein, and has proximately caused damages and injury to Trustee as herein alleged.

13. Trustee is informed and believes and thereon alleges that at all times herein mentioned, each defendant was and now is the agent, servant, employee, co-conspirator, representative and/or alter ego of each of the remaining defendant and, in doing the things hereinafter mentioned, was acting within the scope of his authority as such agent, servant, employee co-conspirator, and/or representative with the permission and consent of the remaining defendants.

### III. JURISDICTION AND VENUE

14. The court has jurisdiction over this action pursuant to 42 U.S.C. Section 1983; the Fifth and Fourteenth Amendments of the United States Constitution; 28 U.S.C. Section 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States; and, 28 U.S.C. Section 1343. Defendant City has deprived Trustee of due process rights arising out of the enumerated acts in furtherance of Defendant City's intended demolition of the Project.

15. Venue is proper in this district under 28 U.S.C. Section 1391(b)(2) because the events that give rise to this Complaint occurred in this district.

### IV. STATEMENT OF FACTS

**A. Early Project History and Nassif Action**

16. In or about mid-2005, Defendant City issued its Building Permit No. B20050373 for the Project.

Page 4

17. In or about November, 2010, then applicable Building Permit No. B20102306 was reactivated for the Project. In the preceding years, pursuant to permits issued by Defendant City, construction, inspections (including foundation and roof sheeting), and permitting (including, but not limited to, temporary power pole, sewer cap, grading, property line wall, and pool and spa) had taken place.

18. On or about January 11, 2011, Nassif executed the Deed granting the real property which includes the Project to Trust in trust. The Deed was duly recorded in the Recording Office of this County in which Defendant City is located, on or about January 21, 2011, as document No. 20110118966.

19. On or about October 21, 2012, Defendant City issued a notice of violations for the Project (the "Violations"). Trust, although owner of the Project, was never served with the notice of the alleged violations, and thus, never had notice and an opportunity to be heard with respect to the Violations.

20. On or about September 28, 2012, Defendant City served Nassif with process in the Nassif Action, which had been filed in the Los Angeles Superior Court as L.A.S.C. Case No. 2SY07323, alleging 16 misdemeanor counts related to the Project, including violations of Defendant City's Municipal Code Section 9-9.102, (adopting sections 401, and 1001.9 of the 1997 Uniform Housing Code), and California Health and Safety Code sections 17920(b), (g), and (h). Trust, although owner of the Project, was not served, and has never been served, with the notice of the Nassif Action or the alleged violations.

21. The Nassif Action continued into in or about mid-2014, when Nassif was ultimately convicted on 13 of the 16 counts.

22. Damage, loss, and injury were incurred by Trust on or about June 9, 2014 when Defendant City elected to hold up construction on the Project, and

Page 5

1 then again, when Defendant City received court approval to demolish the
2 Project on or about June 16, 2014.

### B. Defendant City's and Plaintiff Trustee's Conflicting Analyses of the Viability of the Project

23. Defendant City presented proof, during its prosecution of the Nassif Action, that the Project was a nuisance, claiming, *inter alia*, that it was structurally unsound and a fire hazard, and that it should be demolished. The analysis consisted of visual observations and photographs by Defendant City's witnesses, both of which activities were performed without Defendant City's witnesses setting foot in the partially constructed home, but were undertaken from outside the perimeter fencing of the Project.

24. Defendant City's Building Planner Mark Campbell ("Campbell") was a witness for Defendant City at trial of the Nassif Action. Campbell presented Defendant City's view of the condition of the Project. Campbell testified that he never entered the Project to inspect the Project in support of his conclusions concerning the lack of structural viability of the Project.

25. Trustee's analysis of the Project's viability rests in great part upon her post-Order retention of a licensed structural engineering firm, which firm retained a licensed general contractor as a second consultant. The team of consultants performed in-depth on-site analyses of the total Project from the ground up, and, *inter alia*, an analysis of the risks to contiguous properties associated with demolishing the Project as proposed by Defendant City. The demolition risks were never addressed by Campbell or Defendant City at the trial.

26. Trustee also consulted and continues to consult with the original Project architect, who concurs with Trustee's other consultants' opinions as to the present positive viability of the Project. In sum, the consultants agree that

Page 6

the Project is an excellent candidate for completion. Concomitantly, the consultants have expressed a high degree of concern with respect to the attendant risks to neighboring properties and persons if the proposed demolition takes place.

C. **Defendant City's Failure to Provide Notice to Trust**

27. Although Trust was and is the owner of the Project throughout the period of time during which Defendant City was taking actions against the Project, Trust was never served with process, was never a party in the Nassif Action, and was never provided notice or an opportunity to be heard in the action.

28. During the trial of the Nassif Action, Nassif testified that he did not own the Project. Then, even though the issue of Trust's ownership of the Project was duly raised and disclosed during the trial, Defendant City still failed and refused to provide notice to Trust. Trust had no notice and an opportunity to be heard concerning the destruction of its property.

29. Notwithstanding its receipt of that actual notice of Trust's ownership in addition to the constructive notice imparted by recordation, Defendant City requested the Court to issue the Order granting permission to demolish the Project without notice to Trustee and an opportunity to be heard.

30. Defendant City's presence on Trust's property (while photographing the Project, cataloguing alleged but unverified structural issues at the Project, posting signs on the Project, and, actually affixing its own lock to the Project and its fencing), was warrantless and unpermitted. The acts of dominion and control over Trust's property demonstrate Defendant City's denial of Trust's property rights as the rightful owner of the Project. Trust had no notice and an opportunity to be heard concerning the acts of Defendant upon its property.

31. At the time of the trial in Nassif Action, the Project belonged neither to

Page 7

Nassif nor to Defendant City. The Order mandates demolition and provides no acknowledgment of Trust's ownership interest in the Project.

### D. Impending Demolition of the Project and Project Viability

32. On or about June 9, 2014, following trial in the Nassif Action, Defendant City posted its first notice to Trustee of that which Defendant City was doing with respect to the Trust's property: Notice of Demolition on the Project (the "Posting").

33. On becoming aware of the Posting, Trustee notified Defendant City of Trust's intention to complete construction of the Project. Trustee's acts following the Posting, *inter alia* were:

   A. contacting Defendant City's Building and Planning Department officials and attorneys to advise them of Trust's preexisting ownership of the Project;

   B. retaining a consulting licensed structural engineering firm to analyze the Project for structural viability as well as likely consequences to adjacent properties from Defendant City's demolition plan;

   C. addressing land failure and subsidence issues raised by consulting engineers with neighbors, as well as confirming that the contiguous neighbors to the east and west of the Project prefer that the Project be completed;

   D. retaining counsel;

   E. working to secure a bond for completion of the Project;

   F. consulting with both the architect of record and Defendant City's Building Department concerning any Code compliance issues that must be addressed for completion of the Project;

   G. working with the consulting structural engineers, general contractor, and architect of record to first illicit their opinions, and having done

Page 8

        so to then establish that the Project is entirely suitable for habitation and completion;

    H.  arranging to put in place 24 hour/seven days per week security for the Project in order to address trespass related issues;

    I.  formulating and presenting an offer of settlement to Defendant City;

    J.  offering to pay Defendant City $30,000 for costs incurred related to the Project;

    K.  continuing to address Trust's ownership and Defendant City's demolition issues with Hon. Mayor Steven Aspel; and,

    L.  resubmitting the Project plans to applicable Defendant City departments for approval.

34. Defendant City either knew or should have known of Trust's ownership by way of the constructive notice imparted by the recordation of the Deed, and at least by the time the issue of such ownership was raised in the Nassif Action. Nevertheless, Defendant City proceeded to procure the Order without notice to Trustee.

35. Defendant City was advised of the facts of ownership at or around the time of Nassif Action. Nevertheless, Defendant City proceeded to procure the Order without notice to Trustee.

36. Defendant City has refused to acknowledge or accept the fact of Trust's ownership interest.

37. Defendant City's destruction of the Project will result in irreparable harm to the Trust and constitutes waste.

38. The Project is unique and elegant in its design and construction. By way of example, attached hereto as Exhibit "1" is a true and correct copy of a photograph taken during Trustee's engineering consultant's Project evaluation depicting the Project entryway. The Project is fully suited to

being completed as originally designed.

39. Trustee has made clear to Defendant City that it is ready and willing to fund, bond and complete the Project, but Defendant City having ignored her at all turns, Trustee has exhausted her administrative attempts to halt demolition.

40. The following actions on the part of Defendant City, coupled with Trust's actions to halt demolition as described herein demonstrate the futility on the part of Trust to attempt any further administrative action to stop Defendant City from demolishing the Project:

    A. the Order issued in Nassif Action;
    B. Defendant City's lack of factual, on the ground, first-hand analysis of the condition of the Project;
    C. Defendant City's allocation of funds for demolition;
    D. Defendant City's issuance of bids to demolition contractors;
    E. Defendant City's selection of the lowest bidder for demolition; and,
    F. Defendant City's on-going insistence on demolishing the Project, including correspondence with Defendant City's Community Development Director, consistently making clear that Trust will not be permitted to take any action on the Project until demolition has taken place.

41. Even if the Project is demolished, Trust retains its interest in the land on which the Project is constructed. The projected cost to Trust to return the Project to its current state of construction is in excess of $1 million.

42. Defendant City continues to deny Trust its right to use property, including the demonstrably economical and viable repair and completion of the Project. Defendant City's denial is notwithstanding current expert structural analysis which shows that over 90% of the timber framing in the Project is structurally sound for projected incorporation into the final construction.

### E. Costs to Trust of Defendant City's Demolition

43. Depending on the extent of Defendant City's demolition, preconstruction costs will include but not be limited to,(e.g., architectural, structural, civil, geotechnical, survey, electrical, mechanical engineering, and expert consultation); design review and plan check fees; City and County permits; utility connection fees; school taxes; and environmental fees.

44. Direct costs for rebuilding the foundation to its current state include, but are not limited to construction site inspections; temporary facilities and equipment rental; job supervision; general contractor and subcontractor services, including footings, retaining walls/waterproofing/drainage/grading, foundations, concrete, masonry, flatwork, ground plumbing, and swimming pool.

45. Direct costs for rebuilding the rough structure to its current state include, but are not limited to, sewer and underground utilities; lumber, rough framing materials, structural steel, plumbing top-outs, and HVAC / electrical roughs.

46. Consultant estimates indicate that the net cost to repair Defendant City's destruction of Trust's Project will exceed $1.1 million.

## FIRST CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. SECTION 1983, DEPRIVATION OF PROCEDURAL DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (As Against All Named Defendants and Does 1-10)

47. Trustee realleges and incorporates by reference paragraphs 1 through 46 above.

48. In acting in the ways described and/or in failing to act in a manner to

provide Trustee notice and an opportunity to be heard with respect to the Project, Defendant City has deprived Trustee of her federal constitutional and statutory rights to notice and an opportunity to be heard, and thereby has denied her the due process of law.

49. Defendant City, by virtue of the foregoing actions and inactions as described above in the Nassif Action, and through all of its actions, including, but not limited to, its presence on Trust's property without a warrant or permission from Trustee, affixing its lock to the Project and its fencing without permission from Trustee, its failure to provide Trustee notice and an opportunity to be heard concerning Trust's rights in its property even after actual knowledge of the true ownership of the Project, its refusal to countenance further administrative avenues of relief to Trustee in order to avoid this action, and its failure to provide a process to compensate Trust for losses related to the Defendant City's acts and / or inaction with respect to the Project, has deprived Trust of its federally protected rights and property interests in the Project that belong to Trust by and through Trustee.

50. As a direct and proximate consequence of Defendant City's violations of 42 U.S.C. Section 1983, Trust has suffered injuries and damages, including, but not limited to, deprivation of all economically viable uses for the Project; deprivation from using the Project; deprivation of methods of mitigating damages; and, lack of any process to compensate Trust for demolition of the Project and the costs to repair the destruction of the Project.

51. Defendant City's actions as described above were undertaken and have continued with callous indifference to Trust's federally protected rights, thus entitling Trust to punitive damages pursuant to 42 U.S.C. Section 1983.

//

# SECOND CAUSE OF ACTION
# TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF UNDER 42 U.S.C. SECTION 1983
(As against Defendant City and Does 1-10)

52. Trustee realleges and incorporates by reference paragraphs 1 through 51 above.

53. Because of Defendant City's foregoing wrongful acts in derogation of Trustee's rights pursuant to 42 U.S.C. Section 1983, and the 5th and 14th Amendments to the U.S. Constitution, and the imminent danger of the destruction of the improvements by way of demolition, Trust by and through Trustee has and will continue to suffer irreparable harm as to the Project and Trust's real property unless Defendant City is enjoined *pendent lite* from destroying the Project with preliminary and permanent injunctive relief to follow.

54. Notwithstanding all efforts on the part of Trustee to halt Defendant City's demolition of the Project, Defendant City is actively taking steps to proceed with destruction of the Project, as set forth above, an act for which pecuniary compensation would not afford adequate relief, in that Trust, by and through Trustee, has never been given the opportunity to finish construction of the Project, a unique and elegant residential design which is over 60% complete.

55. Trustee has no plain, speedy and adequate remedy at law to cure Defendant City's actions, thereby entitling her to injunctive relief.

//
//
//
//

Page 13

# THIRD CAUSE OF ACTION
# DECLARATORY RELIEF FOR VIOLATIONS OF RIGHTS OF PROCEDURAL DUE PROCESS
### (As against Defendant City and Does 1-10)

56. Trustee realleges and incorporates by reference paragraphs 1 through 51 and 53 through 55 above.

57. Trust, by and through Trustee, under the United States Constitution, has certain property rights in and to the Project; and, Trust, by and through Trustee, must be and have been afforded due process rights to protect its property interests in the Project under the United States Constitution.

58. An actual controversy exists between Trust, by and through Trustee, and Defendant City in that Trustee claims and contends:

   A. Trust is the owner of the Project and the real property on which the Project is constructed;

   B. Defendant City violated Trust's due process rights by failing to provide Trustee notice and an opportunity to be heard to concerning demolition of the Project;

   C. Defendant City has illegally exerted dominion and control over Trust's real property through its presence at the property, including, but not limited to, warrantless searches, fixing signage to the property fencing, and fixing a lock to the fencing without permission from Trustee;

   D. Defendant City has wilfully ignored Trustee's efforts to halt Defendant City's destruction of the Project;

   E. Defendant City's actions have and will result in irreparable injury to Trust;

   F. Defendant City's actions have altogether precluded Trustee from

1  restoring and using the Project;

2  G. Trust, by and through Trustee, has pursued all reasonable avenues of relief from Defendant City, all of which have been refused, rebuffed and/or ignored;

H. Defendant City has provided no process to compensate Trust for Defendant City's depriving Trust of its property interest in the Project;

I. Defendant City's actions, including, but not limited to, allotting funds for demolition of the Project, soliciting bids for demolition, selecting the lowest reasonable bidder for demolition of the Project, and refusing all efforts on the part of Trust to halt demolition by and through Trustee, have rendered any further efforts to obtain administrative relief on the Trustee, futile;

J. Defendant City's actions were and continue to be undertaken with a callous indifference to Trust's federally protected rights, entitling Trust to punitive damages; and,

K. Defendant City's actions have and will cost Trust significant expense to cure.

59. Trustee is informed and believes and thereupon alleges that Defendant City contends in all material respects to the contrary.

60. A declaratory judgment and decree, and implementing injunctive relief, as well as a determination that Trust has and will suffer significant costs as a result of Defendant City's actions, are authorized and appropriate in this case so that the parties can ascertain their rights and duties and act accordingly.

//
//

## COMPLIANCE WITH PRELITIGATION CLAIMS TO A GOVERNMENTAL ENTITY

61. By completing and submitting Defendant City's City Claim Reporting Form For All Persons or Property, Trustee has complied with the pre-litigation requirements of Government Code Sections 910 *et seq.*

## VI. REQUEST FOR RELIEF

WHEREFORE, Trustee requests that the court:

1. Issue its findings of fact and conclusions of law that Defendant City committed the alleged violations.
2. Issue orders, in a form consistent with Rule 65 of the Federal Rules of Civil Procedure, temporarily, preliminarily, and permanently enjoining Defendant City and its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, for violating Trust's rights under 42 U.S.C. Section 1983; and, the Fifth and Fourteenth Amendments of the United States Constitution.
3. Issue an order placing Trust in the position that it would have been in had there been no violation of Trust's rights.
4. Award compensatory damages, including statutory damages where applicable, plus costs and interest, to which Trust, is found to be entitled.
5. Award punitive damages to which Trust is found to be entitled;
6. Award pre and post-judgment interest, to the extent allowable, costs, and reasonable litigation expenses and attorneys' fees.
7. A declaratory judgment and decree of Defendant City's inappropriate and illegal acts as well as implementing injunctive relief, and a determination that Trust has and will suffer significant costs as a result of Defendant City's

actions, all of which are authorized and appropriate in this action.

8. Grant such other and further relief as this Court may determine to be just and necessary.

DATED: September 29, 2014          LAW OFFICES OF JAMES P. WOHL

_____
James P. Wohl, Esq.
Niall A. Fordyce, Esq.
Attorney for Plaintiff

## VII. DEMAND FOR JURY TRIAL

Trust hereby requests a jury trial on all issues raised in this complaint that may be determined by a jury.

DATED: September 29, 2014          LAW OFFICES OF JAMES P. WOHL

_____
James P. Wohl, Esq.
Niall A. Fordyce, Esq.
Attorney for Plaintiff

## VERIFICATION

I JACQUIE A. FIGG, as Trustee of The Paulina 733 Revocable Living Trust am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29th day of September, 2014, at the city of Los Angeles, State of California.

by: *Jacquie A. Figg*
JACQUIE A. FIGG
As Trustee of The Paulina 733
Revocable Living Trust

Page 18